## BARNES *against* THE STATE:

### IN ERROR.

Where an information on the statute relating to the sale of spiritous liquors, alleged, that on or about the 24th day of *February* 1849, said *A* did sell, and did offer to sell, by himself and by an agent, wines, spiritous liquors, and other intoxicating beverage, to one *B*, being addicted to habits of intoxication, said *A* knowing him to be so addicted, and said *B* being also a common drunkard; it was held, 1. that the information was not bad for duplicity, because it charged *A* with selling and offering to sell, as these acts may have been parts of one and the same transaction; 2. that it was not obnoxious to this objection, because it averred, that *A* did the acts alleged, by himself and by an agent, as those acts may have been joint, and done by both, acting together; 3. that for the same reasons, it was not bad for uncertainty or repugnancy.

Where the prosecutor, in such case, for the purpose of proving that *B* was a common drunkard, at the time of the sale, offered evidence to show, that his habits of intoxication, of which proof had been given, continued for several weeks *after the sale;* it was held, that such evidence was admissible.

THIS was a writ of error from the judgment of the county court, rendered upon an information against *Alphonso Barnes*.

There were three counts in the information, the two first of which were abandoned upon the trial before the justice. The third count was as follows :

" And said grand juror further complains, that heretofore, to wit, on or about the 24th day of *February* 1849, at said *Bristol,* the said *Alphonso Barnes did sell, and did offer to sell, by himself and by an agent,* wines, spiritous liquors, and other intoxicating beverage, to one *Boylston Whitney,* of said *Bristol,* the said *Boylston Whitney* being then and there addicted to habits of intoxication, and the said *Alphonso Barnes* then and there knowing him to be so addicted, and the said *Boylston Whitney* being also then and there a common drunkard ; against the peace and contrary to the statute in such case provided."

The defendant having been convicted before the justice, appealed to the county court, where the cause was tried before a jury. Upon that trial, the attorney for the state introduced *Whitney* as a witness, who testified, that on the 23d day of *February* 1849, he purchased of the defendant, *Barnes,* two quarts of whiskey, and paid him therefor.

And for the purpose of proving, that *Whitney* was a common drunkard, at the time of the sale, the attorney offered evidence to prove, that, for more than two years previous to the sale, he was intoxicated, whenever he could procure spiritous liquors; which habit continued into the month when the liquor mentioned in the information was sold to him. And to prove that this habit continued, and that there had been no reformation previous to the sale, he further offered testimony to prove, that he became intoxicated with the liquor purchased on the 23d day of *February,* and so continued, for several days ; and that he was intoxicated, at different times, for several weeks thereafter.

The defendant objected to any testimony showing that *Whitney* was in a state of intoxication after the 23d day of *February.* But the court decided, that the evidence need not be confined to the day of sale, but that acts of intoxication might be shown for a limited period afterwards, but only for the purpose of showing that he was a common drunkard at the time of sale.

The jury having returned a verdict against the defendant, he filed a bill of exceptions, and also a motion in arrest of

judgment, for the insufficiency of the information, and afterwards brought his writ of error in the superior court. The questions presented upon the record were reserved for the advice of this court.

*Chapman*, for the plaintiff in error, contended, 1. That the information was bad. First, for duplicity. It charges two distinct offences—1. that the defendant *sold ;* and 2. that he *offered* to sell. *Stat.* 600. § 13. It also alleges, that the defendant did the acts, 1. by *himself ;* and 2. *by an agent. Commonwealth* v. *Symonds,* 2 *Mass. R.* 163. *State* v. *Nelson,* 8 *N. Hamp.* 163. Secondly, for uncertainty. It is uncertain of which offence the defendant has been convicted. 1 *Chitt. Cr. L.* 169. 172. *Rex* v. *Horne, Cowp.* 682. Thirdly, for repugnancy. The sale could not be made, by the defendant *himself,* and by another, *as his agent.* 1 *Chitt. Cr. L.* 174. 200. 602. 2 *Sw. Dig.* 414.

2. That the testimony to prove acts of drunkenness *after the sale,* was improperly admitted.

*R. D. Hubbard,* (state's attorney,) and *Hooker,* contra, contended, 1. That the information was not obnoxious to the defects imputed to it. First, the allegation of a sale of divers kinds of liquors, is not double. *The People* v. *Adams,* 17 *Wend.* 475. *Barth* v. *The State,* 18 *Conn. R.* 432. 410. Secondly, the allegation of a sale by himself and by an agent, is not double or repugnant. *The State* v. *Caswell,* 2 *Humph.* 399. *Commonwealth* v. *Towner,* 8 *Metc.* 527.      *y* v. *Perry,* 5 *N. Hamp. R.* 504. Thirdly, the allegation of a sale, and an offer to sell, did not make the information double. *Commonwealth* v. *Tuck,* 20 *Pick.* 356. 360. *Commonwealth* v. *Eaton,* 15 *Pick.* 273. *Whart. Prec. Indict.* 130. Fourthly, duplicity cannot be set up after verdict. *Kilbourn* v. *The State,* 9 *Conn. R.* 560. *Commonwealth* v. *Tuck,* 20 *Pick.* 361. *King* v. *Howard,* 1 *Cush.* 141. *Arch. Cr. Pl.* 53.

2. That the evidence excepted to was properly admitted. This is analogous to a question of insanity, with regard to which it is held, that the evidence need not be confined to the time the act in question was done ; though the point to be determined is, what was the state of mind *at that time ?* 2 *Greenl. Ev.* 650. § 690. *Grant* v. *Thompson,* 4 *Conn. R.*

208.  *Kinne* v. *Kinne,* 9 *Conn. R.* 102.  *Dickinson* v. *Barber,* 9 *Mass. R.* 225.

WAITE, J: In this case two errors have been assigned; the first, that the county court refused to arrest the judgment; and the second, that the court admitted illegal testimony.

1. It is insisted, that the third count in the information, upon which alone judgment was rendered, is bad, for duplicity, uncertainty, and repugnancy. It charges the defendant below with *selling* and *offering to sell,* spiritous liquors, each of which acts, it is said, constitutes a distinct offence; and therefore, the count is bad for duplicity.

But there is nothing in the information, showing, that these acts might not have been parts of one and the same transaction. They are alleged to have been done, at one time and one place. The sale may have been made in consequence of an offer to sell, made by the defendant.

No matters, however multifarious, will operate to make a declaration or information double, provided that all taken together, constitute but one connected charge, or one transaction. *Rowles* v. *Lusty,* 4 *Bing.* 428. (15 *E. C. L.* 291.) Thus, an information charging a person with having committed an assault upon another, and beaten him, will not be bad for duplicity, although assaulting a person may be a criminal offence, as well as beating him, provided both were parts of one and the same transaction.

So an information for a burglary, stating that the prisoner, in the night season, broke and entered a house, with intent to steal, and did in fact steal therein, will not be defective.

If an authority upon this subject were needed, we have only to refer to the late case of *Regina* v. *Bowen,* 1 *Car. & Kir.* 501. (47 *E. C. L.* 501.) There, the indictment stated, that the prisoner feloniously and wilfully did destroy, deface, and injure a certain register of baptisms, marriages and burials, in violation of a statute making a person committing either of those acts, guilty of felony. The counsel for the prisoner proposed to demur specially, upon the ground that the prisoner was charged with more than one offence. But, upon an intimation from *Tindal,* Ch. J., that the prisoner might be bound by the demurrer, and not be allowed to plead

over, the demurrer was withdrawn, and the prisoner pleaded *not guilty.* He was convicted, and the question as to the sufficiency of the indictment, was reserved for the opinion of all the judges; and they held, that the indictment was good, even upon a special demurrer.

It is further claimed, that the information is bad, because it is averred, that the defendant did the acts complained of, by himself and by an agent. But if the court can see, that the acts might have been joint, and could have been performed by both, acting together, then the averment will be in conformity with the truth. Now, there can be no more difficulty in two persons uniting in the sale of spiritous liquors, than in the commission of a burglary or a robbery—offences for which two persons are often joined in the same bill of indictment.

Had the information stated, that one sold rum, and the other wine, there would be weight in the objection. Two separate acts, performed by two persons, acting separately, would then be charged. But that is not the present case. All the acts, although performed by two persons, were done at one and the same time. And, as the statute makes the defendant liable for them, whether the offence was committed by him or by his agent, no injustice is done him, by charging him with an offence committed by him and his agent together. The objection would not prevail, even upon a special demurrer.

2. The other error assigned, is, that the county court improperly admitted testimony as to the intoxication of *Whitney*, subsequent to the sale.

But the testimony was received, not for the purpose of showing that he was then a common drunkard, but that he continued such, to the time of sale, or rather that, at that time, there had been no reformation in his previous habits.

When the liquor was sold to him, he may have been perfectly sober; and that condition may have been the result of a reformation, or of a mere inability to procure the means of intoxication. But when it was shown, that his subsequent habits were the same as they had previously been, the presumption as to a reformation was removed.

The question whether, at a given time, *Whitney* was a common drunkard, stands much upon the same ground as the

question whether a testator, at the time of making a will, was *non compos mentis.* In the latter case, the practice has been, to admit evidence as to the condition of his mind subsequent to the execution of the will, as well as previous to that time, for the mere purpose of enabling the triers to determine his condition when the will was made.

Again, it is said, that in construing the statute relating to the sale of ardent spirits, it has been holden, that a person who sells to a common drunkard, may be subjected to the penalty, without proof that he had knowledge of the character of the vendee ; and therefore, he ought not to be affected, by acts of the vendee, subsequent to the sale, and of which he could have no knowledge, at the time of the sale. *Barnes* v. *The State*, 19 *Conn. R.* 398.

The legislature, for the purpose of protecting, in some measure, the community from the many crimes committed by common drunkards, while under the maddening influence of ardent spirits, may have made it the duty of the rum-seller to see to it, at his peril, that he does not sell to such persons. Yet the rigour of such a statute will not change the rules of evidence, without some provision to that effect, which is not claimed in the present case. The mode of determining the question, whether a person, at a given time, was a common drunkard, must remain the same, as if the statute had been less rigourous in its operation. Besides, as already remarked, the evidence of subsequent acts of intoxication, was not received, for the purpose of showing that *Whitney* was previously a common drunkard, but only that there had been no change in his habits—a fact strongly evinced, by the very act of purchasing ardent spirits.

We are therefore of opinion, that there is no error in the judgment complained of; and so advise the superior court.

In this opinion the other judges concurred, some of them expressing doubts.

**Judgment to be affirmed.**