## Matthew Guastamachio v. E. Gaynor Brennan et als.

Maltbie, C. J., Avery, Brown, Jennings and Ells, Js.

Argued October 9—Decided December 5, 1941.

*John W. Joy,* with whom, on the brief, was *Jacob Schwolsky,* for the appellant (plaintiff).

*Leo V. Gaffney,* assistant attorney general, with whom, on the brief, was *Francis A. Pallotti,* attorney general, for the appellee (defendant).

Brown, J. The facts material upon this appeal are not in dispute. On November 14, 1940, the plaintiff was the owner of a restaurant liquor permit for certain premises in East Hartford. On that evening, the plaintiff being in a hospital, Charles Lang was the sub-

stitute permittee in charge, and pursuant to prior arrangement a bachelor dinner was served in the banquet hall over the restaurant. An inside stairway from the restaurant, and also an outside stairway, afforded access to this hall. Lang was present in the hall during the serving of the dinner, after which he went downstairs where he remained attending to business at the bar. Subsequently, unknown to him, five girls entered the hall upstairs and there engaged in an immoral performance in the presence of the men attending the dinner, until interrupted by the state police who arrested the performers and Lang. He was later discharged. It did not appear that either the plaintiff or Lang knew or had reason to believe that such a performance was contemplated or that it was in fact taking place until after it had been stopped by the police. The liquor control commission found the plaintiff permittee and the substitute permittee unsuitable persons by reason of violation of § 9 of its regulations, in permitting immoral activities on the permit premises and in allowing the premises to be conducted in such manner as to become a nuisance, and suspended the permit for eight weeks and until certain structural changes had been made. The present appeal is from the dismissal by the Superior Court of the plaintiff's appeal from that order.

On November 14, 1940, § 9 read: "Conduct of Permit Premises. No permittee shall allow, permit or suffer in or upon the permit premises any disturbances, lewdness, immoral activities, brawls, or unnecessary noises, or allow, permit, or suffer the permit premises to be conducted in such manner as to become a nuisance. (A permittee will be held strictly accountable for the conduct of his permit business, and nuisances will not be tolerated.)" This was adopted by the liquor control commission pursuant to General

Statutes, Cum. Sup. 1935, § 1019c, empowering it "to make all needful rules and regulations" for the enforcement of the Liquor Control Act, and by virtue of § 1020c had "the same force and effect as law." The plaintiff makes no claim that the regulation is invalid but relies solely upon the court's claimed error in holding that the defendants did not act arbitrarily, unreasonably, or illegally in finding the permittee and substitute permittee unsuitable persons because upon the facts above stated they had violated this section by permitting immoral activities on the premises. The question for determination, therefore, phrasing it in terms most favorable to the plaintiff, is whether the fact that this immoral performance was given as stated upon the permit premises can be reasonably construed ipso facto to have constituted a violation of § 9, in the absence of either actual knowledge or of negligence in supervision by the permittee or substitute permittee.

The plaintiff's principal contention is that the words "permit or suffer" in the regulation in themselves imply that the permittee's conduct, to amount to a violation, must be done knowingly. Had the word "permit" been used by itself there would be force to this contention, for its primary meaning involves the idea of affirmative consent, necessarily involving knowledge. 48 C. J. 924, § 2; Webster's New International Dictionary (2d Ed.), p. 1824. From the fact, however, that the regulation does embrace not only conduct which is permitted but also that which is suffered, it may well be concluded that the latter word was used of conduct which might not fall fully within the former. This is borne out by the fact that, while undoubtedly the words are often used in the same sense, there is a shade of difference in their meaning as strictly and carefully defined, and this has been

recognized by judicial decision. Thus "permit" has been construed to be a more positive term connoting affirmative action or at least assent, and "suffer" as conveying rather the negative idea of passivity. See *Fort Wayne* v. *DeWitt*, 47 Ind. 391, 395; *Hicks* v. *Missouri Pac. R. Co.*, 225 Mo. App. 1053, 40 S. W. (2d) 512; 60 C. J. 991, note 5(b). Recognizing this possible difference and construing "suffer" in the light of the regulation's further provision for "strict accountability," we are satisfied that knowledge upon the part of the permittee should not be held an essential attribute within its meaning as the word is here employed. While it may well be that "suffer" as used in the regulation would not render the permittee responsible for the acts of a trespasser upon the premises, we conclude that it is effective to make him responsible, regardless of knowledge or negligence, for failure to take effectual measures to prevent prohibited conduct by those occupying them with his authority. See *Miller* v. *Prescott*, 163 Mass. 12, 13, 39 N. E. 409; *First Trust & Savings Bank* v. *Raklios*, 247 Ill. App. 183, 193.

The requirement of strict accountability, in connection with the underlying purpose of the regulations, suffices to distinguish this case from the situation in *Selleck* v. *Selleck*, 19 Conn. 501, 505, in which we held that a person was not criminally liable for suffering a ram to go at large unless he failed to exercise due care to restrain him; we treated the word "suffer" in the statute then before us as the equivalent of "permit." *State* v. *Poplowski*, 104 Conn. 493, 498, 133 Atl. 671. The intent of the regulation was to hold a permittee to the same standard, at least in so far as those occupying with his permission are concerned, that has been exacted under statutes similar in purpose prohibiting specified acts in the conduct of the liquor

business and making the violation thereof a criminal offense. In construing these statutes this court has repeatedly held that proof of guilty knowledge by the seller is not essential, and thereby has held violators to the rule of strict accountability. *Barnes* v. *State*, 19 Conn. 398; *State* v. *Kinkead*, 57 Conn. 173, 17 Atl. 855; *State* v. *Katz*, 122 Conn. 439, 189 Atl. 606.

In the present case, the fact that the immoral performance was conducted on the permittee's premises by those there by his authority, establishing as it does the plaintiff's failure to take effectual measures to prevent it, constituted a violation of § 9 of the commission's regulations, whether or not the permittee or the substitute permittee had knowledge of it or was negligent in his supervision. The responsibility for making effective this prohibition rested upon the permittees. *Rose* v. *Liquor Control Commission*, 124 Conn. 689, 690, 199 Atl. 925. The Superior Court was warranted in concluding that the defendants did not act unreasonably, arbitrarily or illegally in holding as they did.

There is no error.

In this opinion the other judges concurred.